**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
Shaun Markley (SBN 291785)
Ethan Litney (SBN 295603)
225 Broadway, 19th Floor
San Diego, California 92101 F
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: elitney@nicholaslaw.org

**LAGUARDIA LAW, APC**
Eric A. LaGuardia (SBN 272791)
402 West Broadway, Suite 800
San Diego, California 92101
Tel: (619) 655-4322
Fax: (619) 655-4344
Email: eal@laguardialaw.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD MCGHEE, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NORTH AMERICAN BANCARD, LLC,<br><br>Defendants. | CASE NO. 17-cv-00586-AJB-KSC<br><br>**PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>**Judge**: Hon. Anthony J. Battaglia<br>**Magistrate**: Hon. Karen S. Crawford<br><br>**Date:** March 24, 2021<br>**Time:** 2:00 p.m.<br>**Courtroom:** 4A |

## I. INTRODUCTION

These facts are undisputed: NAB rolled out "PayAnywhere," nationwide, as a pay-only-as-you-process (or "Pay as you go") service with no recurring out of pocket fees. It then decided to change the pricing plan, nationwide, by adding a $3.99 inactivity fee, retroactively in many cases, to a particular and ascertainable group of customers, including Plaintiff. NAB further decided that the way to warn people about the new fee was via bulk emails *that it knew up to 80% of its customers would never read.* Declaration of Eric LaGuardia, ¶ 2, Ex. 1 (Lin Depo. Tr.), 38:3-25.

In short, this is a typical consumer bait and switch case where most of the important facts are undisputed and can be tried in a few days. Thus, this case is ideally suited for class treatment. Defendant's arguments to the contrary rely on distractions away from the core issues, attempts to manufacture individual issues where none exist, and the heralding of alleged "facts" that are either insignificant at this stage, or were sprung on Plaintiff at the last minute in violation of discovery rules. Defendant's tactics should be ignored, and Plaintiff's motion granted.

## II. OBJECTIONS TO DEFENDANT'S EVIDENCE

### A. The Court Should Strike or Disregard Certain Evidence in The Declaration of Erica Lin Offered in Support of NAB's Opposition

As a threshold matter, Plaintiff objects to the Declaration of Erica Lin and several exhibits attached thereto. Documents and information included in the Lin Declaration should have been disclosed months before NAB filed its Opposition. Further, Ms. Lin's declaration includes many statements that substantially lack foundation, and she impermissibly deviates from her prior testimony as a Rule 30(b)(6) witness. In any event, healthy skepticism is warranted.

On July 15, 2020, After a lengthy meet and confer process, Judge Crawford issued an Order requiring NAB to provide supplemental responses to Plaintiff's Second Set of Requests for Production (including Request No. 5 for all documents describing inactivity fees provided to persons seeking to obtain a card reader until

the present, and Request No. 16 for all versions of the PayAnywhere website prior to December 31, 2016[1]), to state whether any documents were being withheld on the basis of any objection, and to complete its document production by August 20, 2020. Doc. 80. Declaration of Eric LaGuardia, ¶ 3, Ex. 2. On July 29, 2020, NAB stated that all responsive documents in NAB's possession, custody, or control have been produced. *Id.* at ¶ 4, Ex. 3. But despite the Court order to complete production, and NAB's ostensible confirmation of the same, the Lin Declaration now adds several documents that NAB produced long after August 20, 2020, including several produced on the day of their Opposition.[2] LaGuardia Decl., ¶ 5, Ex. 4; ¶ 8, Ex. 6.

Specifically, Exhibit L, which is not Bates stamped, was never produced to Plaintiff, despite being responsive to at least Request No. 5. LaGuardia Decl., ¶ 7. Exhibit M was provided at 9:19 PM on the date NAB filed their opposition. *Id.*, at ¶ 5. Exhibit J, despite being responsive to at least Requests 5 and 16, was produced by NAB on October 8, 2020, eight days before Plaintiff's deadline to move for class certification. LaGuardia Decl., ¶ 8, Ex. 6. Finally, it appears Exhibit Q was never provided to Plaintiff, notwithstanding its BATES number. *Id.* at ¶ 9. These responsive documents should have been timely provided to Plaintiff pursuant to the Court's own Order.[3] As the Court is no doubt aware, this conduct violates the rules

---

[1] Pursuant to NAB's own characterization of the parties' agreement, Request 16 was limited to "All versions of the PayAnywhere website regarding pricing or the cost of the card reader, which would include terms and conditions, from March 23, 2014 to December 31, 2016." *See* LaGuardia Decl., ¶ 4, Ex. 3.

[2] Relatedly, on March 9, 2020, NAB provided a verified response to Plaintiff's Interrogatory No. 5, which asked NAB to describe all actions taken by NAB to inform persons who obtained card readers that they will be charged inactivity fees. *Id.* The Lin Declaration also includes information and documents referencing events that were never reflected in NAB's verified response to Interrogatory No. 5, and were not timely disclosed in this action prior to NAB's Opposition. And, to date, NAB has never amended Interrogatory No. 5. LaGuardia Decl., ¶ 6, Ex. 5.

[3] Additionally, Plaintiff served a Rule 30(b)(6) deposition notice with the ninth and last topic specified as "[t]he efforts undertaken by Defendant to preserve, find, and/or produce relevant documents in this matter." LaGuardia Decl., ¶ 10, Ex. 7. Only after the Court issued an Order requiring NAB to provide a date for a 30(b)(6) witness relating to this topic did NAB's 30(b)(6) deposition finally commence on November

of discovery and disclosure under the Federal Rules of Civil Procedure. *See generally* Hon. Anthony J. Battaglia, U.S. District Judge, *Disclosure and Discovery Manual Under Federal Rules Of Civil Procedure*, (2019 Ed.) ("Battaglia Manual"), pp. 79-89, 159-163.

Ms. Lin's declaration also lacks foundation in several respects, and deviates from her testimony as NAB's 30(b)(6) witness. Despite testifying repeatedly at NAB's 30(b)(6) deposition[4] that she had no knowledge regarding the timing and implementation of certain of NAB's policies, representations, and terms and conditions, Ms. Lin's declaration in Opposition to Plaintiff's motion conveniently fills in the gaps in her prior testimony and NAB's prior discovery responses. For example, when asked whether she "was aware of a terms and conditions document that predates October 3, 2018 where the pricing and the user agreement are printed directly on the terms and conditions without having to go through another link?" Ms. Lin responded "I'm not aware." LaGuardia Decl., ¶ 2, Ex. 1, 65:10-18. Ms. Lin is now confident that the terms and conditions document dated October 3, 2018 went live on the website in late 2017. Doc. 94-2, ¶ 24. This distinction is highly relevant to this action, and Plaintiff should not be learning about this for the first time in

---

5, 2020. Doc. 80, LaGuardia Decl., ¶ 11, Ex. 8. However, when Plaintiff's counsel was ready to depose NAB on this ninth specified topic, which would include the alleged server change precluding production of NAB's website versions in their native format, among other issues, counsel for NAB stated that it was too late for this third designated witness who was to testify at that time and that the deposition would have to be rescheduled for completion on another date. *Id*. at ¶ 12. Despite Plaintiff's efforts to secure a date to finish, and NAB's statement when it unilaterally stopped the 30(b)(6) deposition that it would provide the deponent the following Monday (November 9th) but never did, NAB then changed its tune and instead indicated it disputed the scope allowed for the remainder of the 30(b)(6) deposition, and did not provide Plaintiff another date until mid-December, 2020 (i.e., after the instant motion would be fully briefed). These vagaries smack of an effort to avoid having to explaining NAB's discovery issues until after this motion is resolved.

[4] NAB designated Erica Lin as NAB's 30(b)(6) witness regarding topics including, among other things, the timing and content of all representations made to the public, customers, or potential customers regarding PayAnywhere pricing and implementation of its $3.99 "inactivity fee," including via website, advertisements, correspondence, sales collateral, promotions, or other marketing efforts since March 24, 2013, and changes regarding terms and conditions related thereto. LaGuardia Decl., ¶ 10, Ex. 7.

NAB's opposition. NAB had a duty to produce a knowledgeable Rule 30(b)(6) witness, and should be bound to Ms. Lin's former testimony as such.[5]

Finally, many of the contentions in Ms. Lin's declaration lack foundation with some constituting improper lay opinion testimony. For example, Ms. Lin makes a number of statements about which declarants opened emails and when. *See* Doc. 94-2, ¶ 28. Ms. Lin provides no foundation for her personal knowledge of these alleged facts, no documents to support her claims, and her stated positions and qualifications are similarly unavailing. *See* 94-2, ¶ 1-2; Fed. R. Evid. 602. Further, Ms. Lin's testimony relating to Exhibit P similarly lacks foundation or constitutes improper lay opinion. *See* 94-2, ¶ 1-2; Fed. R. Evid. 702. It is unclear how Ms. Lin's opinion as to the function and capabilities of the Internet Archive's Wayback Machine are rationally based on her perception as a witness and are not scientific or technical knowledge within the scope of Rule 702. Fed. R. Evid. 701; *U.S. v. Durham*, 464 F.3d 976, 982 (9th Cir. 2006).[6]

In summary, Ms. Lin's declaration is highly problematic, and the Court should strike or disregard substantial portions of testimony and exhibits contained therein.

## III. THE COURT SHOULD CERTIFY THE PROPOSED CLASS

### A. Plaintiff's Claims Are Typical

NAB cannot deny the simplicity of the case and Plaintiff's theories, so it resorts to confusing the issues and focusing on the irrelevant, especially when it comes to "typicality." NAB starts by citing oft-quoted language from our Circuit noting that certification may not be appropriate if the representative is "preoccupied

---

[5] *See* Battaglia Manual, p. 111 (citing *Harris v. New Jersey*, 259 F.R.D. 89, 92 (D.N.J. 2007); *Guifu Li v. A Perfect Day Franchise, Inc.*, 2011 WL 3895118, at *4 (N.D. Cal. Aug. 29, 2011) (ordering evidentiary/issue sanctions at class certification for Rule 30(b)(6) misfeasance); *Kartagener v. Carnival Corp.*, 380 F. Supp. 3d 1290, 1299–300 (S.D. Fla. 2019) ("Defendant is bound by the testimony of its corporate representative, which naturally includes the absence of information that witness could provide in response to Plaintiff's questions.").

[6] Notably, Ms. Lin ignores that the website capture in question states "© 2018 PayAnywhere, LLC." *See* Doc. 94-2, 236.

with defenses unique to it." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). But NAB never identifies what "defense" it is talking about. NAB never articulates any defense, like "statute of limitations" or "laches," that will allegedly swamp the trial here.

What NAB is really doing, rather, is harping on irrelevant factual differences to attack typicality. But "[t]ypicality refers to **the nature** of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984-85 (9th Cir. 2011) (internal citation and quotation marks omitted, emphasis added). "Differing factual scenarios resulting in a claim of the same nature as other class members does not defeat typicality." *Id.* at fn. 9, citing *Hanon*, 976 F.2d 497, 508 (9th Cir. 1992).

Here, NAB first must mischaracterize the nature of Plaintiff's case to try to make factual differences important. For instance, NAB attempts to recast the case when, without relevant citation, it says that "Plaintiff's counsel claims the putative class members were induced…based on representations found on NAB's website that merchants would not be charged [fees]…" Oppo at 11:1-8. That statement is technically true. Plaintiff's counsel[7] does assert that some class members were misled by the website.

But the website is not *the nature* of Plaintiff's case. The nature of Plaintiff's case, rather, is a bait and switch – that NAB gave one uniform and undisputed set of promises about pricing to an ascertainable group of customers, and then it switched the pricing on them after they had already signed up. The evidence is uncontroverted that all Class members, including Mr. McGhee, signed up for PayAnywhere under one uniform pricing plan, regardless of the how they received the pricing. I.e., Plaintiff's theory of the case is agnostic to the format the original promises took

---

[7] As a threshold matter, what "Plaintiff's counsel claim" is not admissible evidence. What matters is what *Plaintiff* claims about the nature of Defendant's behavior and how he will prove it at trial.

(website versus phone call versus any other modality) because the representations were always the same in all forms.

Importantly, NAB itself expressly confirmed what should already be obvious – that of course the representations were uniform when, here, we are talking about the nationwide pricing plan for the entire PayAnywhere program. LaGuardia Decl., ¶ 12, Ex. 9 (Jones 30(b)(6) Depo.), Ex. 11, 57:17-58:18; 59:24-60:21 (Mr. McGhee's pricing, as confirmed by his online application, was the same for everyone nationwide). And NAB never offers any evidence to suggest that McGhee did not really hear or really care about the pricing. *C.f.* LaGuardia Decl., ¶ 14, Ex. 10 at 47:14-24; 49:22-50:12 (McGhee, rather, confirms the pricing plan as told to him). NAB fails to refute that class members' claims are "fairly encompassed by the named plaintiffs' claims." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).

Ultimately, the websites NAB mentions are merely evidence (undisputed at that) of the one (again undisputed) pricing plan.[8] That pricing plan was identical for everyone in the class, until NAB indisputably changed it, including for Mr. McGhee, when it added the "inactivity fee." And NAB changed the original pricing in the same way for everyone: by adding the same amount ($3.99) under the same title ("inactivity fee") at the same interval (monthly) and according to the same formula (failure to use the service over a 12-month period).

In summary, typicality is determined with reference to the NAB's conduct and the plaintiff's legal theory. *Wagner v. NutraSweet Co.,* 95 F.3d 527, 534 (7th Cir.1996). The conduct here–the changing of the pricing program–is undisputed. And plaintiff's legal theory–that this was an improper bait and switch–will be argued

---

[8] In fact, we might not even need the websites at trial when Defendant's employees confirm again on the stand that there was only one original and unform pricing plan nationwide and that it was represented "consistently" to everyone throughout its lifespan, i.e. until it was changed by adding the (again uniform) $3.99 fee. LaGuardia Decl., ¶ 14, Ex. 9, 58:13-59:23, 61:4-62:20, 66:3-67:3.

equally for everyone in the class. The typicality prong is, therefore, satisfied.[9]

## B. Plaintiff Satisfies the Minimal Standard for Adequacy

NAB fails to establish any significant or irreconcilable conflict among Plaintiff, his counsel, or the class, so it focuses instead on trying to establish that Plaintiff somehow will not be "vigorous" in his prosecution of this matter. *Cf. Ellis,* 657 F.3d at 985 (confirming the two-prong test for adequacy). But NAB's attacks on the second "adequacy" sub-prong fail.

First, how many times a witness answered "I don't know" or "I don't remember" at a deposition is simply not part of the inquiry and NAB cites no case saying otherwise. Indeed, if counting answers *did* matter, NAB would certainly not fare well. NAB's own witnesses, including their 30(b)(6) witnesses, gave "I don't know" responses dozens of times in their much shorter depositions. *See, e.g.,* Laguardia Decl., ¶ 14. Indeed, this testimony about emails sent to merchants about the inactivity fee, from NAB's own Director of Marketing who was later designated as a Rule 30(b)(6) representative, demonstrates why it is dangerous for NAB to make this a memory contest:

> **Q. So if merchants were emailed more than once, why would that have been?**
> MR. STEINMAN: Same objections.
> THE WITNESS: I can't speak to circumstances years ago. I just don't know.
>
> **Q. Who would be the best person to ask that?**
> MR. STEINMAN: Vague and ambiguous. You can answer.

---

[9] The only other fact that Defendant cites is that Mr. McGhee does not remember receiving a card reader. Defendant then argues that this renders him atypical because not having a card reader – if true- allegedly precluded him from making a transaction that could have stopped the inactivity fee from being charged. First, Defendant's statement is factually incorrect. PayAnywhere worked by swiping *or* by keying in the card numbers manually. LaGuardia Decl, Ex. 11, 48:14-21; Doc 84-2, Ex. 4 (internal pricing sheet confirms a "keyed" transaction option). No card reader was ever necessary. *Id.* Second, Defendant's statement is totally irrelevant. The class, by definition, is only made up of people who did *not* process a transaction in 12 months. Neither the proposed class definition nor any of the legal claims rise and fall on *why* class members did not process any transactions in that time.

> THE WITNESS: I think if anybody was gonna remember, it would be me, and I just don't.

LaGuardia Decl., ¶ 14, Ex. 11, 104:5-15.

To the extent NAB really is claiming that Mr. McGhee is not committed to this case or does not understand his obligations as a class representative, it is again mistaken. Mr. McGhee has stuck through this case for years, including through NAB's unsuccessful appeals and motions for reconsideration, all for the prospect of getting back a couple of $3.99 charges. To be sure, Mr. McGhee already confirmed that he provided "detailed information for the Complaint." Doc. 84-4, ¶ 9. He answered and verified numerous rounds of discovery, provided all of his documents, contributed his personal knowledge where required. *Id.* at ¶¶ 9-10; LaGuardia Decl., Ex. 10, 55:5-8; 56:7-12. He sat for an all-day deposition, suffering through opposing counsel suggesting to his face that he must be senile. *Id.*, at 24:7-26:12.[10] And contrary to NAB's suggestion otherwise, he prepared for that deposition for many hours, over multiple sessions, including by working with his attorneys to prepare. *Id.,* 22:21-24; 54:13-20. In short, Mr. McGhee certainly understands his obligations as a class representative and has honored those obligations over these years. Doc. 84-4, ¶ 11.

### C. Common Questions Predominate the UCL Fraudulent Claim

NAB argues that individual issues predominate primarily because reliance under the UCL cannot be presumed where large numbers of class members were not exposed to the challenged conduct. NAB claims both that insufficient members of

---

[10] To the extent Defendant may be suggesting that Plaintiff is not credible, the threshold for disqualifying a class representative or supposed credibility issues is very high. *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724–25 (7th Cir. 2011) ("For an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims."). Nothing Defendant cites meets this threshold. Indeed, it would be reasonable to question the credibility of anyone who claims to remember perfectly every detail about a sales call they received seven years prior.

the class were exposed to the representations, and that its representations materially changed over time. NAB is wrong on both counts.[11]

First, the "challenged conduct" is a uniform pay-as-you-go pricing plan. NAB does not refute that everyone was originally exposed to the same pricing plan. Again, there was only one pay-as-you-go plan that existed. I.e., there is no evidence in the Opposition or in logic that consumers somehow signed up for PayAnywhere without knowing the price of it. To be sure, NAB's own evidence demonstrates that all members of the class were nonetheless required to view the same written embodiments of that one pricing plan as part of the process of becoming a PayAnywhere merchant.

### *1. At a Minimum, The Entire Class Viewed the Same Representations in the PayAnywhere Application*

NAB does not attempt to dispute that the PayAnywhere application itself *required* merchants to view representations that the PayAnywhere service had no monthly fees and no monthly minimums, and that these representations were never corrected. *See* Doc. 84-1 (Motion), 18. While NAB argues that class members "were potentially exposed to many different PA websites, Pricing Pages, User Agreements, blog posts and direct emails regarding the inactivity fee," conspicuously absent is any argument that that the PA Application changed at any time. *See* Doc. 94 (Opposition), 27; *see also* Docs 19 (5/15/2017 Harwood Decl.), 60-1 (8/22/2019 Lin Decl) (Both confirming that "to become a PayAnywhere merchant … at any time, a merchant must go to the PayAnywhere website – 'payanywhere.com'" – and complete an application.). The uniform representations regarding the lack of monthly fees or monthly minimums were made to the entire class, and have not

---

[11] NAB's suggestion that all class members must be exposed is an overstatement, as the Ninth Circuit has found that predominance may be defeated where "large numbers of class members" were never exposed to the challenged conduct, "as even a well-defined class may inevitably contain some individuals who have suffered no harm as a result of a defendant's unlawful conduct. *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136 (9th Cir. 2016).

changed during the class period. Therefore, class members' reliance can be presumed, and thus individualized issues relating to reliance cannot predominate.

### 2. *Class Members Were Subject to NAB's Pervasive National Marketing with Materially Similar Misrepresentations*

Again, the price was the same nationwide until NAB changed it, nationwide. The websites Defendant spends so much time on only confirm this and the pay-only-for-what-you-process nature of the original pricing plan. Indeed, the authenticated historical screenshots of the PayAnywhere website demonstrate that NAB made essentially the same material representations between 2011 and 2016 (as apparently even as late as 2018), including that PayAnywhere had no monthly fee and no monthly minimum, that merchants "[p]ay only when you process … [w]e don't require you to process a minimum amount each month and there are no setup, cancellation, or monthly fees," that there was **"[n]ever a [m]onthly [f]ee or [m]inimum"** (emphasis added), that the service had "one low rate per swipe with no monthly fees," and that the service had "no setup, monthly, or hidden fees." *See* Doc. 84-2, Ex. 2 (Rosenburg Affidavit).[12]

---

[12] NAB's challenges to the accuracy of Plaintiff's authenticated webpages from the Wayback Machine are meritless and further underscores its discovery abuses in this action. Firstly, "[i]nadmissibility alone is not a proper basis to reject evidence submitted in support of class certification." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004 (9th Cir. 2018). Secondly, the Ninth Circuit has held an affidavit from the Internet Archive is sufficient for proper authentication of webpages from the Wayback Machine and has relied upon the Wayback Machine's accuracy even without such an affidavit. *Memory Lane, Inc. v. Classmates, Inc.*, 646 F. App'x 502, 504 (9th Cir. 2016); *see Monster Energy Company v. City Beverages, LLC*, 940 F.3d 1130, 1140, n. 3 (referencing content of former webpages found on the Wayback Machine). NAB's authority to the contrary is inapposite. *See Rutherford v. Evans Hotels Inc.*, 2020 WL 5257868, at *12 (S.D. Cal. Sept. 3, 2020) (Sustaining objection to the website record because the method of obtaining the pages did not meet the standards of the Internet Archive's Wayback Machine); *Mycoskie, LLC v. Ebuys, Inc.*, 293 F.Supp.3d 1076, 1084 (C.D. Cal. 2017) (Finding *unauthenticated* webpages from Internet Archive containing different language from produced documents did not create a triable issue of fact in opposing ***motion for summary judgment***). Further, NAB simultaneously attacks the Wayback Machine webpages while refusing to produce versions of its website other than several versions of a single page (http://www.payanywhere.com/blog/ merchant-faq-what-is-an-inactivity-fee, not the PayAnywhere main page or "pricing" page) **printed from the Wayback Machine**. After the Court compelled NAB to provide further responses

While NAB's representations to the class were not *identical* throughout the class period (other than those contained in the PA Application, as discussed above), they do not need to be, they only must be *similar*. As the Ninth Circuit has recognized, "[t]he class action mechanism would be impotent if a defendant could escape much of his potential liability for fraud by simply altering the wording or format of his misrepresentations across the class of victims." *In re First Alliance Mortgage Co.,* 471 F.3d 977, 990, 992 (9th Cir. 2006); *see Shien v. Canon U.S.A., Inc.*, 2010 WL 3170788, at *7 (C.D. Cal. Aug 10, 2010) (Despite evidence of numerous models of a consumer product with differing misrepresentations, the Central District was "unpersuaded that these variations are the type of material variation in defendant's representations … that would render fraud-based claims unsuitable for class treatment," as the messages were "substantially similar."); Fed. R. Civ. P. 23(b)(3) advisory committee's note ("[A] fraud perpetrated on numerous persons by the use of *similar misrepresentations* may be an appealing situation for a class action ... [unless] there [is] material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed.") (emphasis added); *see also Torres,* 835 F.3d at 1137-38.

NAB's suggestion that the representations are materially different is absurd, and its referenced authority is in no way "exactly like" the instant action, but it is rather highly distinguishable. In *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1069 (9th Cir. 2014), the defendant disputed both the existence and content of signs at Home Depot stores across California, and there was a related complication about the varying oral representations made to the in-person customers. Neither of these problems exist here given that the representations were about something as

---

to Plaintiff's Requests for Production, NAB confirmed pages **they find helpful** printed from the Wayback Machine were "provided to persons seeking to obtain a card reader." Despite this, NAB has since refused to admit that other Wayback Machine pages "reflected the content" of the pages as they originally appeared, forcing Plaintiff to obtain an affidavit from the Internet Archive to authenticate the pages for this motion. *See* LaGuardia Decl., ¶ 14, Ex. 12; *see* Doc. 84-2, Ex. 2.

fundamental as the entire pricing structure for NAB's service and that the pricing was repeated consistently in *all* formats. NAB's reliance on *Perrine v. Sega of America, Inc.*, 2015 WL 2227846, at *2-3 (N.D. Cal. May 12, 2015) is even more inapposite, as the alleged misrepresentation were based off of a small number of in-person demonstrations of an inchoate video game that included features that never made it into the final product, and there was no attempt or reasonable method offered to limit the class or ascertain which video game enthusiasts viewed these demonstrations. Here, by contrast, NAB admits that class members were told the same price and had to visit its website and complete its uniform application.[13]

### D. Common Questions Predominate Under the UCL Unfairness Prong and Under Plaintiff's Claim for Unjust Enrichment

In addition, as described below, NAB fails to demonstrate that individual issues predominate in Plaintiff's claims under the UCL unfairness prong and for unjust enrichment, as the adequacy of NAB's emails is a merits issue subject to common proof, and NAB misstates the UCL unfairness prong.

*1. NAB's Emails to the Class Do Not Constitute Sufficient Notice, And in Any Event Their Adequacy Subject to Common Proof*

Whether NAB's purported emails to the class members concerning the inactivity fee allow NAB to avoid liability under the UCL unfairness prong or as

---

[13] The cases cited by NAB that actually involve websites are equally unavailing. *Ehret v. Uber Techs, Inc.*, 148 F.Supp.3d 884, 900 (N.D. Cal. 2015), involved an alleged misrepresentation on Uber's website and blog posts, where the Northern District correctly recognized that Uber patrons are not required to visit Uber's website, much less its blog posts, to obtain a ride from an Uber driver. Similarly, in *Glibert v. MoneyMutual, LLC*, 318 F.R.D. 614, 626 (N.D. Cal. 2016), the Northern District specifically noted that there was insufficient evidence of classwide exposure as "the record before the Court demonstrates that the [misrepresentation] is not set forth, let alone referenced, on the home page of the MoneyMutual.com website." Here, by contrast, the misrepresentations were as to the undisputed price and as located on the PayAnywhere home page, which NAB admits class members had to visit, and was also present on the PayAnywhere pricing page, which, unlike the blog posts at issue in *Ehret* (and ironically offered by NAB in an attempt to create individualized issues), is perhaps the one other PayAnywhere website potential merchants would be expected to view.

unjust enrichment is a merits issue. Given that NAB admits the emails are form in nature (see Doc. 94-2, ¶¶ 16-17), the effect of these emails is subject to common proof, and therefore does not raise individualized issues that defeat certification.[14]

### 2. *NAB Misstates the UCL Unfairness Prong Standard*

NAB argues that Plaintiff must meet the three-pronged FTC Act test referenced in *Camacho v. Automobile Club of Southern California*, 142 Cal.App.4th 1394 (2006), to demonstrate a violation of the unfairness prong of the UCL. NAB ignores that the Ninth Circuit has explicitly rejected *Camacho*'s use of the FTC Act test in the consumer context, which this District has repeatedly recognized. *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 736 (9th Cir. 2007) *see, e.g., In re Qualcomm Litig.*, 2017 WL 5985598, at *6 (S.D. Cal. Nov. 8, 2017) ("There are three primary consumer tests: (1) the 'tethering test,' … (2): the 'balancing test,' … and (3) the FTC test which requires … an injury that consumers themselves could not have reasonably avoided [citing *Camacho*]. Pending resolution of the issue by the California Supreme Court, the Ninth Circuit has approved the use of **either the balancing or tethering** tests in consumer actions.") (emphasis added). Therefore, no individualized issues relating to avoidability prevent class certification.

### E. Class Members Need Not Demonstrate Individual Standing

NAB summarily claims that "many of the putative class members were undeniably informed of the facts Plaintiff claims NAB concealed…[t]hus, these

---

[14] Ultimately, NAB's emails simply do not constitute adequate notice to begin charging the class members inactivity fees. This Court and the Ninth Circuit have found that filling out an application to become a merchant, one needs to accept the Terms and Conditions of Merchant Services Agreement, which this Court has found NAB is neither a party to nor a third-party beneficiary of. Doc. 70 (Order Denying NAB Motion to Strike). Further, even if NAB were a party to the Terms and Conditions agreed to by Class Members (it is not), Global Direct (an actual party to the agreement) is the party that is allowed to modify fees pursuant to the Terms and Conditions. Doc 60-1, Ex. B, ¶ 17. However, even Global Direct must provide "a minimum of thirty (30) days advanced notice … in the case of any fee increase or introduction of a new fee." *Id*. Importantly, the agreement mandates all notices required under the agreement to be sent via "telefax, by overnight carrier, or by regular or certified mail," **not email**. *Id*. ¶ 22. Therefore, even if NAB was able to modify a fee under the Terms and Conditions (it is not), notice of the modification could not be made by email. *Id.*

13                                     17-cv-00586-AJB-KSC
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

class members could not have suffered any injury 'as a result of" NAB's alleged statements and therefore do not have any Article III standing." Opp. p. 25. First, Plaintiff disputes NAB's characterization. For today, the evidence necessary to resolve this dispute is common.

Second, NAB's statement is simply inaccurate *even if* we assume that NAB's alleged disclosures before 2018 were adequate. "[E]ven a well-defined class may inevitably contain some individuals who have suffered no harm as a result of a defendant's unlawful conduct." *Torres*, 835 F.3d at, 1136 (9th Cir. 2016) (citing Newberg on Class Actions § 2:3; *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 823 (7th Cir. 2012) ("[S]ome class members' claims will fail on the merits if and when damages are decided, a fact generally irrelevant to the district court's decision on class certification.")). Further, this district has long rejected NAB's argument that *Mazza* requires all members of a class must have Article III standing, finding that only a named Plaintiff must have Article III standing for a class to be certified, and finding that the ostensibly contrary language in *Mazza* "comes in a single sentence that cites Second Circuit authority without even acknowledging the earlier Supreme Court and Ninth Circuit authority it is contradicting." *Waller v. Hewlett-Packard Co.*, 295 F.R.D. 472, 479 (S.D. Cal. 2013) (Rejecting the *Mazza* argument and collecting authority as of 2013).[15] Importantly, since the issuance of *Mazza*, the Ninth Circuit reaffirmed *Bates*, holding that "in a class action, [Article III] standing is satisfied if at least one named plaintiff meets the requirements."

---

[15] Indeed, "[t]his single line in *Mazza*, unexplained and absent any discussion of prior Ninth Circuit precedent, directly contradicts *Bates* [*v. United Parcel Service*, 511 F.3d 974, 985 (9th Cir. 2007)], which was rendered *en banc*," and holds that in a class action only a named plaintiff must demonstrate Article III standing. *Arnott v. U.S. Citizenship and Immigration Services*, 200 F.R.D. 579, 584 (C.D. Cal. 2012); *see Mason v. Ashbritt, Inc.*, 2020 WL 789570 (N.D. Cal. Feb. 17, 2020) (Discussing *Mazza*, and collecting more recent authority rejecting NAB's position). "[*Mazza* cannot have] overruled prior Ninth Circuit precedent—let alone an *en banc* decision—unless the reasoning or theory of prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority…[t]here is no intervening higher authority in this case." *Id*.

*Ollier v. Sweetwater Union High School District*, 768 F.3d 843, 865 (9th Cir. 2014).

### F. Any Definitional Overbreadth Is a Result of NAB's Conduct in This Litigation, and Does Not Defeat Certification

Even assuming, *arguendo*, that NAB's newly-produced representations about its website and terms and conditions are accurate, whether or not NAB's representations about its inactivity between September 2017 and October 3, 2018 were sufficient to avoid liability is a merits issue, not a certification issue. *See Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1138 (9th Cir. 2016). Even assuming that the class is properly limited to all persons in California who became PayAnywhere merchants prior to September 2017 (rather than October 3, 2018) and were charged Defendant's inactivity fee, certification should still be granted. "[A]n over-inclusive class definition need not defeat certification entirely" because the Court has broad discretion to narrow an overbroad class to fit within the boundaries of Rule 23. *In re NJOY, Inc. Litig.*, 120 F.Supp.3d 1050, 1093 (C.D. Cal. Aug. 14, 2015); *Walker v. Life Ins. Co. of the Southwest*, 953 F.3d 624, 634 (9th Cir. 2020) ("Ninth Circuit precedent obligates district courts to tailor class definitions in a way that avoids predominance issues.") If the Court finds the proposed class overbroad, Plaintiff respectfully requests that the Court exercise its discretion to narrow the definition.[16]

## IV. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion for Class Certification in its entirety, appoint Plaintiff Gerald McGhee as class representative, and appoint Plaintiff's counsel as class counsel in this matter.

---

[16] An exercise of the Court's discretion is particularly appropriate where, as here, a defendant's repeated failure to provide requested information and documents relating to the appropriate scope of the class potentially results in very minor definition overbreadth. As discussed above, NAB produced Ms. Lin as its Rule 30(b)(6) witness and asked whether she "was aware of a terms and conditions document that predates October 3, 2018 where the pricing and the user agreement are printed directly on the terms and conditions without having to go through another link?" Ms. Lin responded "I'm not aware." Laguardia Decl, Ex. 1, 65:10-18. Now, Ms. Lin's story is that the document dated October 3, 2018 allegedly went live on the PayAnywhere website a year earlier. Doc. 94-2, ¶ 24. NAB's conduct should not be rewarded.

Respectfully submitted:                    **NICHOLAS & TOMASEVIC, LLP**

DATED:   December 1, 2020        By:      */s/ Ethan T. Litney*
                                          Craig M. Nicholas
                                          Alex Tomasevic
                                          Shaun Markley
                                          Ethan T. Litney
                                          225 Broadway, Floor 19
                                          San Diego, California 92101
                                          Telephone: (619) 325-0492
                                          Facsimile: (619) 325-0496
                                          Email: cnicholas@nicholaslaw.org
                                          Email: atomasevic@nicholaslaw.org
                                          Email: smarkley@nicholaslaw.org
                                          Email: elitney@nicholaslaw.org

                                          Attorneys for Plaintiff