UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD McGHEE, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NORTH AMERICAN BANCARD, LLC,<br><br>Defendant. | Case No.: 17-cv-00586-AJB-KSC<br><br>**ORDER:**<br><br>**(1) DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS;**<br><br>**(2) DENYING PLAINTIFF'S MOTION FOR SANCTIONS FOR FAILURE TO PRODUCE A RULE 30(b)(6) WITNESS; and**<br><br>**(3) DENYING PLAINTIFF'S MOTIONS TO SEAL**<br><br>**[Doc. Nos. 108, 120, 130]** |

Before the Court is plaintiff Gerald McGhee's ("plaintiff" or "McGhee") Motion for (1) Sanctions for Spoliation of Evidence Under the Court's Inherent Authority and Federal Rule of Civil Procedure 37(e) and (2) Sanctions for Failure to Produce Rule 30(b)(6) Witness and Violation of the Court's September 29, 2020 Order Under Federal Rule of Civil Procedure 37(b)(2)(A)(1), Federal Rule of Civil Procedure 37(d), and the Court's

1

Inherent Authority (the "Sanctions Motion"). Doc. No. 108. Defendant North American Bancard, LLC ("NAB" or "defendant") opposed the Sanctions Motion on March 16, 2021 (the "Opposition"). Doc. No. 112. At plaintiff's request, the Court permitted both parties to submit supplemental briefing regarding defendant's production of documents after the Sanctions Motion was filed (the "Supplemental Brief," Doc. No. 129, and the "Supplemental Opposition," Doc. No. 132). At the Court's invitation, both parties also submitted a supplemental brief on the issue of whether the District Court's denial of class certification moots the issues presented in the Sanctions Motion (the "Mootness Brief," Doc. No. 138, and the "Mootness Opposition," Doc. No. 137).

Plaintiff also moved to seal exhibits attached to his Supplemental Brief and Mootness Brief that defendant designated as confidential under the operative blanket protective order in place in the litigation, and portions of his briefing that directly quoted or revealed the contents of those documents (the "Motions to Seal"). Doc. Nos. 120, 130. Defendant neither joined in nor responded to the Motions to Seal.

Having carefully considered the parties' submissions and the arguments of counsel, and for the reasons stated below, plaintiff's request for spoliation sanctions is **DENIED WITHOUT PREJUDICE**. Plaintiff's request for sanctions for failure to produce a properly prepared Rule 30(b)(6) witness is **DENIED**. Plaintiff's Motions to Seal are **DENIED**.

## I. BACKGROUND

### A. Plaintiff's Allegations

Defendant is a payment processing company that offers its merchant-customers a mobile credit card reader (the "Card Reader"). *See* Doc. No. 1 at 2. Plaintiff alleges that when he obtained a Card Reader in 2014, NAB fraudulently misrepresented he would not be charged any service or other "hidden" fees, but that beginning in late 2015, NAB began deducting an "inactivity fee" from plaintiff's bank account. *See id.* at 4. Plaintiff filed his complaint on March 24, 2017, asserting causes of action for, *inter alia*, negligent and
///

intentional misrepresentation, fraudulent concealment, and unjust enrichment on behalf of himself and all others similarly situated. *Id.* at 7-13.

**B. Plaintiff's Sanctions Motion**

The case was stayed pending NAB's appeal of the District Court's denial of its motion to compel arbitration, but discovery has been underway since the stay was lifted on June 5, 2019. *See* Doc. Nos. 44, 50, 54. In June 2020, the parties sought the undersigned's guidance regarding discovery and raised the issue of whether defendant's document production was complete. *See* Doc. No. 80 at 6. During a June 30, 2020 conference, defendant's counsel represented to the Court that "a server on which some responsive documents may [have] exist[ed] was replaced in 2017 and the process to restore the server was onerous," thus delaying NAB's ability to complete its document production. *Id.* at 7. On July 15, 2020, the Court ordered NAB to advise plaintiff which document requests were impacted by the server issue, and further to complete its document production within 35 days of the Order. *Id.* On July 29, 2020, NAB's counsel advised plaintiff by email that "the server on which some responsive documents [to Requests for Production 5, 6 and 7] may have existed was replaced in 2017 and the prior server could not be restored." Doc. No. 108-2 at 75.

Plaintiff sought additional information about NAB's now-defunct server. On September 10, 2020, plaintiff noticed the deposition of NAB's Rule 30(b)(6) designee on nine topics, one of which was "the efforts undertaken by Defendant to find and/or produce relevant documents in this matter" (hereafter "Topic 9"). *Id.* at 160. On September 29, 2020, after a discovery conference during which the issues of preservation and NAB's server migration were again discussed, the Court ordered NAB to produce a Rule 30(b)(6) designee on Topic 9, including ESI preservation. Doc. No. 82. The Court's Order further provided that "[i]f plaintiff believe[d] a motion regarding spoliation [was] warranted" after the Rule 30(b)(6) deposition, plaintiff was to "bring such motion within 30 days of the completion" of that deposition. *Id.*

///

3

Plaintiff represents, and defendant does not dispute, that NAB designated three individuals to testify pursuant to the Rule 30(b)(6) deposition notice. *See* Doc. No. 108-1 at 12; *see also* Doc. No. 108-2 at 171. The first two designees, Ms. Jones and Ms. Lin, were deposed on November 11, 2020, but Topic 9 was not covered that day. Doc. No. 108-1 at 12. Ms. Lin was subsequently designated to testify regarding Topic 9 and was produced for deposition on December 12, 2020. *Id.* at 13. That deposition concluded less than two hours later. *Id.* at 13. Ms. Lin was produced for deposition a third and final time to testify regarding Topic 9 on January 20, 2021. *Id.* Thirty days later, on February 19, 2021, plaintiff filed the instant Sanctions Motion. Doc. No. 108.

## C. Defendant's Belated Document Production

In April 2021, after plaintiff filed his Sanctions Motion, defendant produced an additional 1,422 pages of documents responsive to plaintiff's discovery requests. Doc. No. 129-1 at 3. Plaintiff represents that the documents defendants produced in April 2021 were responsive to plaintiff's RFPs No. 2, 4, 7, 8, 10, 12 and 16, and asserts that defendant's belated document production was *per se* evidence that NAB's counsel intentionally withheld documents from him. Doc. No. 129 at 5. Although plaintiff acknowledges that the late document production is separate from "the abuses discussed in plaintiff's [Sanctions] [M]otion," he nevertheless contends that the late document production shows "repeated misconduct" by defendants, and that the Court should consider such "misconduct" in deciding whether to grant the Sanctions Motion. *Id.* at 5-6.

In response, defendant states that it "located additional responsive email files" after plaintiff's Sanctions Motion was filed, and promptly produced them. Doc. No. 132-1 at 2. Defendant asserts that the recently produced documents are mostly "duplicative" of documents already produced. Doc. No. 132 at 3. Defendant also states plaintiff fails to "link" the retired server and the recently produced documents, such that defendant's document production does not support a finding of spoliation or the imposition of spoliation sanctions. *Id.* at 5. Defendant further points out that plaintiff has not made any showing of prejudice, because none of the documents would have changed the outcome of

plaintiff's "failed" class certification motion, nor do the documents "move[] the needle one iota" on the merits of his claims. *Id.* at 4-5.

### D. Class Certification Decision

On May 6, 2021, while plaintiff's Sanctions Motion was pending before this Court, the District Court denied plaintiff's motion to certify the class without prejudice (the "Class Certification Order"). *See* Doc. No. 126. Observing that plaintiff's own deposition testimony demonstrated he "never even viewed the PayAnywhere website (much less relied on any representation on the website), never applied for the PayAnywhere service (online or otherwise), and never entered into an agreement with Defendant for such services," the District Court concluded that plaintiff "ha[d] not carried his burden in establishing typicality" as would be required by Rule 23(a)(3). *See id.* at 8. Further, the District Court found that plaintiff "could not recall basic facts about … his claims, and the claims of the putative class," and that this "admitted lack of knowledge of the litigation demonstrate[d] he [was] not an adequate class representative." *Id.* at 9-10.

Because the District Court found plaintiff had not met the typicality and adequacy requirements of Rule 23(a), it did not reach the question of whether the putative class met the requirements of Rule 23(b). *Id.* at 10. The District Court denied plaintiff's motion for class certification without prejudice, having noted during the hearing on the motion that its finding that plaintiff was not "an appropriate class representative" was independent of "the ultimate merits of the claim of the rest of the group." *See* Doc. No. 128 at 38. The District Court also overruled plaintiff's objections to evidence defendants cited in opposition to his motion but purportedly did not timely produce to plaintiff, stating that it had not "rel[ied] on any of the disputed evidence to come to its conclusions." Doc. No. 126 at 11. The matter was then referred to the undersigned for scheduling. *Id*.

Given the District Court's findings, the undersigned invited supplemental briefing from the parties on the issue of whether the Class Certification Order rendered the Sanctions Motion moot. Doc. No. 135. Plaintiff asserts that his Sanctions Motion is not moot, because there is a "present controversy" between him and NAB and that the Class

Certification Order did not pronounce upon the merits of that controversy. Doc. No. 138 at 5. Plaintiff further asserts that the allegedly spoliated evidence is relevant to plaintiff's claims, and therefore the Class Certification Order did not moot the Sanctions Motion. *Id.* Defendant disagrees, pointing out that because of the Class Certification Order, "there is no class representative directing the Action." Doc. No. 137 at 7. Defendant contends that Court cannot allow plaintiff's counsel "unfettered discretion" to control the litigation, including by demanding discovery that is not relevant to McGhee's individual claims, and urges the Court to "dismiss" the Sanctions Motion. *Id.* at 8.

### E. Relief Sought

As noted, plaintiff's Sanctions Motion is two-fold. First, he asserts he is entitled to sanctions for NAB's failure to preserve relevant evidence when it migrated its server in 2017. Doc. No. 108-1 at 2. McGhee asks the Court to "order NAB to turn over the actual servers that allegedly could not be restored, to [his] counsel, so counsel can have them forensically imaged and searched by a third party, at [NAB's] expense." Doc. No. 108-1 at 22. McGhee further seeks a hearing with the Court "[a]fter the forensic examination is complete," so as to "to determine [the] appropriate sanctions or next steps, if any, including possible adverse inference sanctions" if the results of the forensic examination yield evidence of intentional spoliation. *Id.*

Second, McGhee seeks sanctions for defendant's failure to produce a knowledgeable witness in response to his Rule 30(b)(6) deposition notice. Doc. No. 108-1 at 26. Specifically, McGhee asks the Court to "order NAB to finally produce a qualified Rule 30(b)(6) witness regarding Topic 9 and reimburse plaintiff's attorneys' fees and costs associated with the new deposition." *Id.* The Court will address each of these bases for sanctions in turn.

## II. MOTION FOR SPOLIATION SANCTIONS

### A. The Parties' Positions

Plaintiff asserts that "absolutely case-critical" documents were lost when NAB's server was replaced. Doc. No. 108-1 at 20. Specifically, according to NAB's own

6

representations to plaintiff, documents potentially responsive to Requests for Production ("RFPs") 5, 6 and 7 "may" have been kept on the inoperative server.[1]  *Id.*; *see also* Doc. No. 108-2 at 75.  Plaintiff further asserts that NAB failed to take reasonable steps to preserve the server (and any documents or data contained therein), warranting sanctions under Rule 37(e) and the Court's inherent authority.  *See* Doc. No. 108-1 at 15-19.

Defendant contends that plaintiff's motion is procedurally improper because plaintiff failed to meet and confer regarding the alleged spoliation and did not seek the Court's leave to move for sanctions, and urges the Court to deny the Motion on that basis alone.  Doc. No. 112 at 19.  Setting aside these asserted procedural improprieties, defendant further contends that plaintiff's Sanctions Motion should be denied because the server was not a "storage bin," and its retirement did not result in the spoliation of any relevant data or documents.  *Id.* at 15.  Defendant also states that the server in question was virtual (as opposed to a piece of hardware), such that the forensic examination plaintiff has demanded cannot be performed.  *Id.* at 25.

**B. Plaintiff's Request for Spoliation Sanctions Is Procedurally Proper**

As a threshold matter, the Court addresses defendant's assertion that plaintiff failed to meet and confer regarding the alleged spoliation, and failed to obtain the Court's leave to move for sanctions.  *Id.* at 5, 20-21.  The docket reflects that plaintiff raised his concerns regarding potential spoliation in conferences with the Court in June 2020 and again in September 2020, each of which was preceded by a meet and confer effort that did not resolve plaintiff's concerns.  *See* Doc. Nos. 80, 82.  When NAB represented to both plaintiff and the Court that the process of ascertaining whether the server could be restored impacted NAB's ability to complete its document production, the Court ordered defendant to inform

---

[1] RFP No. 5 requests: ALL DOCUMENTS describing NAB's inactivity fees provided to persons seeking to obtain a CARD READER between January 1, 2010 and the present.  RFP No. 6 requests: ALL DOCUMENTS describing NAB's inactivity fees charged to persons who obtained CARD READERS between January 1, 2010 and the present.  RFP No. 7 requests: ALL DOCUMENTS RELATING TO notice about the imposition of an activity fee charged to persons who obtained CARD READERS.  *See* Doc. No. 108-2 at 91.

plaintiff which discovery responses were potentially delayed by the server migration and restoration. *See* Doc. No. 80 at 7. After further conference with the parties, the Court then ordered defendant to produce a witness to testify as to NAB's preservation efforts, stating that if, after deposing NAB's representative regarding these issues, "plaintiff believe[d] a motion regarding spoliation is warranted," plaintiff was to file such motion within 30 days of completing the deposition. Doc. No. 82. Considering this history of events, the Court cannot agree that plaintiff failed to meet and confer with defendant, or that "no … leave of Court was obtained before Plaintiff filed this [M]otion." Doc. No. 112 at 21. NAB's final deposition on Topic 9 concluded on January 20, 2021 and, in compliance with the Court's Order, plaintiff filed the Sanctions Motion 30 days later. Doc. No. 82. Accordingly, plaintiff's request for spoliation sanctions is procedurally proper.

## C. Plaintiff Has Not Made an Adequate Showing that Sanctions Are Warranted

The law imposes upon litigants "a duty to preserve evidence which [they] know[] or reasonably should know is relevant to" pending or reasonably anticipated litigation. *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006). "Spoliation" is a party's breach of its duty to preserve relevant evidence for its adversary's use in litigation, and is sanctionable. *Id.* at 1066. Such sanctions serve to cure the prejudice created by the spoliation, and to deter any future spoliation. *See Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 626 (C.D. Cal. 2013).

Rule 37(e) governs the spoliation of electronically stored information ("ESI") and provides that:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court … upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice …

Fed. R. Civ. P. 37(e)(1). Intentional spoliation gives rise to harsher sanctions under Rule 37(e)(2). *See* Fed. R. Civ. P. 37(e)(2) (noting that certain sanctions are available "only

8

17-cv-00586-AJB-KSC

upon finding that the party acted with the intent to deprive another party of the information's use").

A court may also punish "discovery violations" pursuant to its inherent power to regulate litigants and counsel who come before it. *Jackson v. Microsoft Corp.*, 211 F.R.D. 423, 430 (W.D. Wash. 2002). However, "[b]ecause of their very potency," the Court's "inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). The Court may not impose sanctions pursuant to its inherent power unless it finds that a party has acted in bad faith. *See Sell v. Country Life Ins. Co.*, 189 F. Supp. 3d 925, 929 (D. Ariz. 2016) (collecting cases). District Courts in this Circuit are split as to whether Rule 37 provides the exclusive remedy for spoliation of ESI, or whether the Court may also impose such sanctions pursuant to its inherent authority. *See Aramark Mgmt., LLC v. Borgquist*, No. 8:18-cv-01888-JLS-KESx, 2021 WL 864067, at *4 (C.D. Cal. Jan. 27, 2021) (noting split and collecting cases).

Regardless of whether the Court calls upon the Federal Rules or its inherent power, the burden is on the plaintiff to establish the relevance of the allegedly spoliated evidence. *See Ryan v. Editions Ltd. West, Inc.*, 786 F.3d 754, 766 (9th Cir. 2015) (finding it was not error to deny motion for spoliation sanctions where documents "were irrelevant") (citing *Akiona v. U.S.*, 938 F.2d 158, 161 (9th Cir. 1991)). The Court finds plaintiff cannot meet this burden in the current procedural posture of the case. Plaintiff disagrees, stating that there is a "present controversy" between him and NAB and that the denial of class certification "has no bearing on the ultimate merits" of that controversy. Doc. No. 138 at 4. But, whether or not the Class Certification Order mooted plaintiff's *lawsuit*, the question is what impact it had on plaintiff's *motion*.

As plaintiff acknowledges, spoliation sanctions are appropriate "where … the lost evidence was 'relevant' to a claim or defense at issue." Doc. No. 108-1 at 17. In his Sanctions Motion, plaintiff described the allegedly spoliated documents as "some of the most direct merits evidence relating to what ***class members*** were actually told" about the
///

9

imposition of an inactivity fee. Doc. No. 108-1 at 21 (emphasis added).[2] But, for reasons that have nothing to the purportedly missing documents, plaintiff does not represent the class. *See* Doc. No. 126 at 7-10. Although it may be true, as plaintiff states, that "there will be a trial regardless" of whether the class is certified (*see* Doc. No. 138 at 5), in the current circumstances that trial will be of plaintiff's individual claims only. The Court is not persuaded that evidence plaintiff describes as relevant to "whether the inactivity fee was disclosed to *class members*" (*see* Doc. No. 108-1 at 20) is necessary to the "fair" adjudication of plaintiff's individual claims. *See* Doc. No. 138 at 5 n.1.

That the allegedly spoliated information is not relevant to plaintiff's claims also forecloses a finding of prejudice, because its loss has not "impaired [plaintiff's] ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (defining prejudice in the spoliation context); *see also Reinsdorf*, 296 F.R.D. at 627 (noting that the party seeking spoliation sanctions "must … show that the evidence would have been helpful in proving its claims or defenses") (citation omitted); *Sell*, 189 F. Supp. 3d at 929 (noting requirement that "there exist a relationship between the … [alleged] misconduct and the matters in controversy") (citation omitted). Put simply, the loss of irrelevant evidence is not prejudicial. *See Ramirez v. Zimmerman*, No. 17-cv-1230-BAS-AHG, 2020 WL 905603, at *2 (S.D. Cal. Feb. 25, 2020) (noting that Court must consider "the importance of the information to the case" in determining whether its loss was prejudicial). Spoliation of ESI that does not prejudice the opposing party is not sanctionable. Fed. R. Civ. P. 37(e)(1); *see also Reinsdorf*, 296 F.R.D. at 627 (noting that requiring a showing of both relevance and prejudice "'is an important check on spoliation allegations and sanctions motions'") (citation omitted).

---

[2] *See also id.* at 5 (referencing "representations made to the *class members*…in…marketing and application webpages"); 8 (describing requests for "documents … provided to *class members*" and "notice to *class members*" as those affected by the spoliation); 14 (referring to "*class member* application data"); 20 (referring to "marketing terminology," "contracts" and "pricing" related to other *class members*).

Plaintiff argues that the Court should nevertheless find that the Sanctions Motion "survive[d]" the denial of class certification, relying on *Cooter & Gell v. Hartmax* Corp., 496 U.S. 384 (1990) and *In re Exxon Valdez*, 102 F.3d 429 (9th Cir. 1996). *See* Doc. No. 138 at 6 and n.2. As the foregoing discussion demonstrates, however, plaintiff's Sanctions Motion is not "collateral to the merits" of the case, *id.*, because neither relevance nor prejudice can be assessed without reference to the merits.

Furthermore, the Court finds plaintiff's reliance on *In re Exxon Valdez* and *Cooter & Gell* misplaced. To begin, in both cases, a plaintiff voluntarily dismissed a complaint to avoid sanctions. *See Cooter & Gell*, 496 U.S. at 389-90 (upholding imposition of Rule 11 sanctions where plaintiff dismissed his complaint pursuant to Rule 41(a) after defendant's Rule 11 motion filed); *In re Exxon Valdez*, 102 F.3d at 431 (plaintiffs moved to dismiss under Rule 41(a) after willfully "fail[ing] to comply with repeated discovery requests"). Yet, a ***party's*** manipulation of the litigation process to avoid the consequences of its abusive conduct is markedly different from the situation presented here, where an action ***by the District Court*** – over which neither party had control – changed the landscape of the litigation in a way that affects plaintiff's Sanctions Motion.

True, there are times when the Court may – or should – impose sanctions on a litigant whose bad-faith conduct "harm[s] the integrity of the judicial process," despite a change in the procedural posture of the case. *See* Doc. No. 138 at 6 (quoting *Balla v. Idaho St. Bd. of Correction*, 119 F. Supp. 3d 1271, 1281 (D. Idaho 2015)). But this is not one of them. Unlike in *Exxon Valdez* and *Cooter & Gell*, defendant's bad faith in this action has not been established. *See In re Napster*, 462 F. Supp. 2d at 1066-67 ("a party's motive or degree of fault is relevant to what sanction, ***if any***, is imposed") (emphasis added). Setting aside plaintiff's unsubstantiated accusations of defendant's "repeated misconduct," Doc. No. 108-1 at 19, plaintiff admittedly cannot provide the Court with nonspeculative evidence that defendant intentionally spoliated evidence without further investigation and discovery. *See Ryan*, 786 F.3d at 766 (upholding denial of motion for sanctions based on "speculative" allegations of spoliation).

Indeed, it is important to recall the spoliation sanctions plaintiff seeks here: that defendant be ordered to submit to and pay for a forensic examination of the server (assuming it were possible), and thereafter be required to appear at an evidentiary hearing at which the results of the forensic examination (if any) will be presented to the Court. On the record before it, the Court finds that the requested time-consuming and costly sanctions do not "correspond[] to the willfulness of [defendant's] destructive act and the prejudice suffered by [plaintiff].'" *See id.* at 1066-67. The Court further finds that the imposition of these sanctions would be incompatible with both the Court's obligation to apply the Federal Rules so as "to secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, and the directive that it must use its inherent power "with restraint and discretion." *Chambers*, 501 U.S. at 44.

For the foregoing reasons, the Court finds that plaintiff has not made an adequate showing that sanctions are warranted. Even assuming the alleged spoliation occurred, the District Court's Class Certification Order is fatal to plaintiff's ability to show that the spoliated ESI was relevant to his claims, or that he was prejudiced by its loss. The Court further declines to impose sanctions to punish or deter unproven bad faith conduct. Accordingly, plaintiff's request for spoliation sanctions is **DENIED WITHOUT PREJUDICE**. If the putative class is ultimately certified, and upon a showing of good cause, plaintiff may seek the Court's leave to renew his motion.[3]

///
///
///
///

---

[3] The Court has assumed for purposes of the discussion herein that information was lost during the server migration, but notes that whether such loss occurred remains disputed. Plaintiff is cautioned that even if he is permitted to renew his motion, he will nevertheless be required to make a proper showing – including that the ESI in question "cannot be restored or replaced through additional discovery" – before the Court would consider imposing sanctions. *See Garrison v. Ringgold*, No. 19-cv-0244 GPC-DEB, 2020 WL 6537389, at *6 (S.D. Cal. Nov. 6, 2020) (identifying required showing for sanctions under Rule 37(e)).

# III. MOTION FOR SANCTIONS FOR FAILURE TO PRODUCE A RULE 30(b)(6) WITNESS

## A. The Parties' Positions

As an independent basis for sanctions, plaintiff complains that despite multiple opportunities, defendants failed to produce a witness who could address Topic 9, including the fate of the retired server and what, if any, information was stored thereon. Doc. No. 108-1 at 25. Plaintiff asserts that NAB's designee, Ms. Lin, was "woefully unprepared," citing excerpts of her deposition testimony in which she could not provide "specific details" about NAB's search for and production of documents responsive to plaintiff's discovery requests. *Id.* at 25-26. Plaintiff requests that the Court order defendant to produce a witness properly prepared to testify as to Topic 9 ("[t]he efforts undertaken by [NAB] to find and/or produce relevant documents in this matter"), and further to pay for the continued deposition. *Id.* at 26; *see also* Doc. No. 108-2 at 160.

Defendant disputes that its witness was unprepared, and states that plaintiff has "misrepresent[ed]" the testimony. Doc. No. 112 at 26. Defendant also contends that any shortcoming in the testimony is attributable to plaintiff's "overbroad" deposition topic and not a failure to adequately prepare the witness. *Id.* Defendant attaches declarations from Ms. Lin and another NAB employee, Michael Edwards, regarding NAB's efforts to locate relevant documents in this matter and the server migration that happened in 2017. *See* Doc. Nos. 112-2 and 112-4.

## B. The Witness Was Not Prepared

A deposition pursuant to Rule 30(b)(6) is a discovery device used to test an organization's knowledge of relevant information. *See Memory Integrity, LLC v. Intel Corp.*, 308 F.R.D. 656, 660-61 (D. Or. 2015). The Rule imposes mutual obligations on the parties. The party seeking the deposition must first "describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). Once so notified, the organization "'then must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledgeable and binding

13

answers on behalf of the corporation.'" *Memory Integrity*, 308 F.R.D. at 661 (citation omitted). Where the responding party fails to do so, "the purpose underlying Rule 30(b)(6) [is] 'frustrated.'" *Id.* (citation omitted). The Court may sanction a party for producing an unprepared Rule 30(b)(6) witness, which "is tantamount to failure to appear at deposition." *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 289 (N.D. Cal. 2015).

Having reviewed the deposition excerpts attached to the parties' various filings, the Court agrees with plaintiff that Ms. Lin was not prepared for her deposition. She testified that she had been informed she had been designated to testify as to Topic 9 "a couple of weeks" before her December 12, 2020 deposition. Doc. No. 108-2 at 8. To prepare herself, she spoke to NAB's outside counsel for "15, 30 minutes" on two occasions before the deposition. *Id.* at 10, 25. Although not entirely clear, it appears that Ms. Lin had similarly brief conversations with two other NAB employees, but that she did not "need" to do so as the other employees merely "confirmed what [she] already knew." *Id.* at 13-14, 20-21. Ms. Lin initially stated she did not review any documents to prepare for her deposition, but later stated she reviewed some screenshots for "context." *Id.* at 27, 36.

The Court cannot say this preparation was *per se* inadequate, but Ms. Lin's deposition testimony reveals that her preparation efforts were lacking in this case. She was unable to testify as to NAB's document retention or destruction policies, whether general or specific to the litigation, and was unable to state with certainty when NAB began migrating its server. *Id.* at 28, 31, 34-35. Ms. Lin's December 12, 2020 deposition concluded abruptly, and was reconvened just over a month later, on January 20, 2021. It is not clear from the excerpts provided whether Ms. Lin undertook any additional preparation for her second deposition, but regardless, she remained unprepared to testify on Topic 9. Ms. Lin responded "I don't know" to a significant number of questions that were well within the bounds of Topic 9, such as: what information was housed on the migrated server, where NAB stored its emails, what steps were taken by NAB in response to the litigation hold letter to ensure that relevant evidence was preserved, what steps were taken by NAB to search for and produce documents responsive to plaintiff's discovery

requests, how (if at all) migration of the server impacted NAB's ability to do so, and the location and restorability of the retired server. *See* Doc. No. 108-2 at 48, 50, 51, 58-59, 62-64, 66, 68. NAB submitted a declaration from Ms. Lin that clarified or added detail to her deposition testimony, as well as the declaration of Michael Edwards, NAB's Manager of Systems Administration, describing the steps he took to search for and preserve relevant documents in this action. *See* Doc. No. 112-2 at 2-11; Doc. No. 112-4. Although this information appears to remedy the shortcomings in Ms. Lin's testimony, the Court notes that had Ms. Lin been sufficiently prepared for her deposition, these declarations would not have been necessary.

Furthermore, the Court rejects defendant's assertion that it was not obligated to better prepare Ms. Lin because Topic 9 is "overbroad." Doc. No. 112 at 26. Given the history of the dispute, the Court finds the questions posed at the deposition should reasonably have been anticipated by NAB. Regardless, it is not acceptable for an organization to refuse to prepare its designated witness to testify because it deems a topic unwieldy or irrelevant. Instead, if a party who receives a Rule 30(b)(6) notice believes that any subject matter for examination is overbroad, burdensome, or otherwise objectionable, the proper course is to first meet and confer with the noticing party, and to seek a protective order from the Court if necessary. Defendant did not do so here, and cannot now complain that Topic 9 was objectionably overbroad.[4]

///

---

[4] Defendant's assertion that Ms. Lin's failure to testify adequately on Topic 9 was due to plaintiff's counsel's own lack of efficiency and "inapposite questions" is not well-taken. Doc. No. 112 at 26; Doc. No. 112-3 at 2-3. Having reviewed the transcript excerpts, the Court has no doubt that the deposing counsel could have conducted the deposition more efficiently but for defense counsel's numerous and improper speaking objections, many of them baseless, which inevitably led to colloquy between counsel and requests from the witness to repeat the question. If any further depositions are taken in this matter, ***all*** counsel are reminded that objections "must be stated concisely in a nonargumentative and nonsuggestive manner." Fed. R. Civ. P. 30(c)(2). The Court will consider a proposal for a deposition protocol should the parties wish to submit one. *See, e.g., Van Osten v. Home Depot, U.S.A., Inc.*, No. 19CV2106 CAB (BGS), 2020 WL 6449204, at *4 (S.D. Cal. Nov. 3, 2020).

### C. Plaintiff's Motion Is Procedurally Improper

The Court's September 29, 2020 minute order gave plaintiff leave to file "a motion regarding spoliation." Doc. No. 82. However, plaintiff's request for sanctions for failure to produce an adequately prepared Rule 30(b)(6) witness is plainly a separate and independent discovery motion. *See* Doc. No. 108-1 at 22 ("Plaintiff **additionally** moves for sanctions for NAB's failure to produce a qualified witness …"). Although plaintiff has styled this a "motion for sanctions," he requests "that the Court order NAB to finally produce a qualified Rule 30(b)(6) witness regarding Topic 9" at defendant's expense – which is more accurately described as a motion to compel further deposition testimony. *See id.* at 26. Regardless of how it is characterized, however, the record demonstrates that plaintiff proceeded directly to motion practice regarding this discovery violation, without meeting and conferring with defendant and without obtaining this Court's leave.

Rule 37(a) requires that before a motion compelling discovery can be filed, the moving party must "actually confer or attempt to confer in good faith" with the opposing party, and must further certify to the Court that it did so. *See Banks v. Freddie Mac*, No. 2:11-cv-00648-GMN-CWH, 2013 WL 1189995, at *2 (D. Nev. Mar. 21, 2013) (citation omitted); *see also* Fed. R. Civ. P. 37(a). The District's Local Rules and the undersigned's Chambers' Rules echo this requirement. *See* CivLR 26.1(a); Chambers' Rules and Civil Pretrial Procedures for the Honorable Karen S. Crawford, §VIII.A. As other courts have observed, the requirement that the parties make a "sincer[e]" effort to resolve their dispute without Court intervention is not merely clerical but "serve[s] important purposes" such as the promotion of efficiency and the conservation of judicial resources. *Banks*, 2013 WL 1189995, at **1-2; *see also Fennell v. Pacific Maritime Ass'n*, No. C16-5933RSL, 2017 WL 3334019, at *2 (W.D. Wash. Aug. 4, 2017) ("The meet and confer requirements of [Rule] 37(a)(1) and [the Local Rules] are imposed for the benefit of the Court and the parties.").

Furthermore, it appears that through the parties' voluminous filings surrounding plaintiff's Sanctions Motion, defendants have now provided the information plaintiff

would likely have obtained through the meet and confer process regarding defendants' document collection and preservation. *See id.* (denying motion to compel where "the particular deficiencies identified by plaintiff in his motion ha[d] … been addressed" through the parties' moving papers and describing the moving papers as "a written meet and confer before the Court").

Accordingly, notwithstanding its finding that Ms. Lin was not adequately prepared to testify as NAB's designee, the Court **DENIES** plaintiff's motion for failure to comply with Rule 37, the District's Local Rules, and the undersigned's Chambers' Rules.

## IV. MOTIONS TO SEAL

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citation omitted). The party requesting that documents be sealed bears the burden of overcoming the strong presumption of access. *Id*. Where the documents to be sealed are attached to a non-dispositive discovery motion, the party requesting sealing must make a "'particularized showing'" of "'good cause.'" *Id.* at 1180 (citation omitted). "Good cause exists where the party seeking protection shows that specific prejudice or harm will result" if the request to seal is denied. *Anderson v. Marsh*, 312 F.R.D. 584, 594 (E.D. Cal. 2015). Even where good cause is shown, the Court should seal information only to the extent necessary to protect a party from harm. *See In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 425 (9th Cir. 2011).

Plaintiff moved to seal five exhibits attached to his Supplemental Brief, and portions of the Supplemental Brief that "directly reference or quote from" those exhibits, on the basis that defendants designated those documents as "confidential" or "highly confidential" pursuant to the blanket protective order in place in the litigation. *See* Doc. No. 120 at 2; Doc. No. 120-1 at 3-4. On the same basis, plaintiff likewise moved to seal nine exhibits

attached to his Mootness Brief, and portions of the Mootness Brief that reveal their contents. *See* Doc. No. 130 at 2; Doc. No. 130-1 at 4-5. As noted, NAB did not join in or otherwise respond to the Motions to Seal.

In this Circuit, a party's designation of a document as confidential pursuant to a blanket protective order does not suffice to establish good cause for sealing. *See Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (noting that blanket protective orders are "by nature overinclusive" and do not require a "'good cause' showing under [Rule] 26(c)"); *see also Small v. Univ. Med. Ctr. of S. Nevada*, No. 2:13-cv-00298-APG-PAL, 2015 WL 1281549, at *3 (D. Nev. Mar. 20, 2015) (citation omitted) (noting that "[b]lanket protective orders are entered to facilitate the exchange of discovery documents" and do not make any "findings that a particular document is confidential or that [its] disclosure would cause harm"). The fact that NAB designated documents "confidential" – or even "attorneys' eyes only" – is not, "[s]tanding alone," sufficient to establish good cause for sealing them. *Benchmark Young Adult School, Inc. v. Launchworks Life Svcs., LLC*, No. 12-cv-02953-BAS(BGS), 2015 WL 2062046, at *2 (S.D. Cal. Apr. 30, 2015). Furthermore, neither party proposed "limited and clear" redactions, seeking instead to seal these documents in their entirety. *See Kamakana*, 447 F.3d at 1183.

The Court is particularly unwilling to premise a sealing order on NAB's confidentiality designations in this matter, when NAB has already filed hundreds of pages of information it designated "confidential" or "highly confidential" on the public docket.[5] While NAB is free to reassess (and possibly withdraw) its confidentiality designations at any time, the volume of purportedly "confidential" information defendant has elected to file publicly suggests to the Court that NAB's designations in the first instance were the result of mass or routinized designation rather than a careful evaluation of the potential

---

[5] *See* Doc. No. 94-2 at 16-29, 31-32, 78-116, 118-121, 127-134, 136, 141-163, 234, and 238; *see also* Doc. No. 112-2 at 55-110, 238-245, 247, 252-274, and 276.

18

harm that might occur if any particular document were disclosed. Indeed, it appears to the Court that defendant adopted a practice in this litigation of designating any information not available on NAB's website as "confidential." This practice undermines any argument in favor of sealing the exhibits at issue in plaintiff's Motions to Seal.[6]

Because neither party has made the requisite particularized showing of good cause for sealing, plaintiff's Motions to Seal are **DENIED**.

## **ORDER**

For the reasons stated herein, it is hereby **ORDERED** that:

1. Plaintiff's Motion for Sanctions [Doc. No. 108] is **DENIED WITHOUT PREJUDICE** as to the request for spoliation sanctions;
2. Plaintiff's Motion for Sanctions [Doc. No. 108] is **DENIED** as to the request for further testimony on Topic 9; and
3. Plaintiff's Motions to Seal [Doc. No. 120 and Doc. No. 130] are **DENIED**.

**IT IS SO ORDERED**.

Dated: June 23, 2021

Hon. Karen S. Crawford
United States Magistrate Judge

---

[6] The parties and their counsel are cautioned that the Court considers mass document designation an abusive discovery practice that will not be tolerated going forward.

19

17-cv-00586-AJB-KSC