**NICHOLAS & TOMASEVIC, LLP**
  Craig M. Nicholas (SBN 178444)
  Alex Tomasevic (SBN 245598)
  Shaun Markley (SBN 291785)
  Ethan Litney (SBN 295603)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: elitney@nicholaslaw.org

**LAGUARDIA LAW, APC**
  Eric A. LaGuardia (SBN 272791)
402 West Broadway, Suite 800
San Diego, California 92101
Tel: (619) 655-4322
Fax: (619) 655-4344
Email: eal@laguardialaw.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNE BENNETT on behalf of herself and all others similarly situated; and GERALD MCGHEE, <br><br>                        **Plaintiffs,** <br>     vs. <br><br> NORTH AMERICAN BANCARD, LLC, <br><br>                    **Defendant.** | **CASE NO. 17-cv-00586-AJB-KSC** <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT FOR:** <br><br> **(1)  FRAUDULENT CONCEALMENT;** <br><br> **(2)  INTENTIONAL MISREPRESENTATION;** <br><br> **(3)  RESTITUTION/UNJUST ENRICHMENT;** <br><br> **(4)  VIOLATIONS OF CALIFORNIA'S UCL;** <br><br> **(5)  VIOLATIONS OF CALIFORNIA'S FAL; AND** <br><br> **(6)  CONVERSION** |

FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, June Bennett ("Bennett"), on behalf of herself and those similarly situated, and Plaintiff Gerald McGhee ("McGhee") on behalf of himself, (collectively referred to as "Plaintiffs"), based upon facts which either have evidentiary support, or are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery, allege as follows:

**INTRODUCTION**

1.     This is a class action lawsuit on behalf of consumers who Defendant improperly charged undisclosed and deceptive monthly fees in connection with its credit card processing service and products.

2.     Defendant NORTH AMERICAN BANCARD, LLC ("Defendant" or "NAB") is a payment processing company. It offers mobile payment acceptance options to individuals and businesses, like credit card readers that attach to smart phones. One service NAB offers or offered under the assumed name (doing business as) Pay Anywhere, LLC is a "Pay-As-You-Go" credit card processing service which sometimes came with a free mobile credit card reader. NAB advertised this product as free, with no setup fees, monthly fees, monthly minimums, or other hidden fees. NAB promised consumers that all they would have to pay, rather, was a set percentage of every transaction they ran, i.e. that they would only have to "Pay-As-You-Go."

3.     Plaintiffs Bennett and McGhee were two of Defendant's Pay-As-You-Go customers.  And despite the promises of no hidden or additional fees, i.e., that customers would only pay as they "go," Defendant eventually charged multiple hidden fees to Plaintiffs and thousands of other individuals in the form of a $3.99 (per month) "inactivity" fee. Defendant started automatically taking those inactivity fees right out of its customers' bank accounts. Defendant collected millions in illicit inactivity fees from Plaintiffs and their fellow consumers this way.

4.     Plaintiffs now bring this matter to recoup those ill-gotten gains and they now bring claims against Defendant for fraudulent concealment, intentional

misrepresentation, and conversion. Plaintiffs also seek restitution based on Defendant's unjust enrichment and violations of several California consumer protection statutes, namely California's Unfair Competition Law ("UCL"), Cal. Business and Professions Code sections 17200, *et seq.* and California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

## JURISDICTION AND VENUE

5.     This Court has jurisdiction based on 28 U.S.C. § 1332(d). Plaintiffs are citizens of California, whereas Defendant is a citizen of Delaware and/or Michigan. Plaintiffs are informed and believe that the amount in controversy in the Complaint exceeds the sum or value of $5,000,000.

6.     This Court has personal jurisdiction over Defendant because it conducts substantial business in California. NAB intentionally availed itself to the laws and markets of California through operation of its business in California.

7.     Venue is proper in the Southern District of California pursuant to 28 U.S.C. § 1391(b) and (c). A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial District.

## THE PARTIES

8.     Plaintiff GERALD MCGHEE is, and at all times herein mentioned was, an individual residing in the County of San Diego, California.  He obtained the Pay-As-You-Go credit card processing service product from Defendant in California and was charged inactivity fees from approximately December 2015 through April 2016.

9.      Plaintiff JUNE BENNETT is, and at all times herein mentioned was, an individual residing in the County of San Bernardino, California. She obtained the Pay-As-You-Go credit card processing service product and card reader from Defendant in California and was charged inactivity fees from approximately 2016 through at least 2017.

10.    Plaintiffs are informed and believe Defendant NORTH AMERICAN

FIRST AMENDED CLASS ACTION COMPLAINT

BANCARD, LLC is, and at all times mentioned was, a corporation organized and existing under and by virtue of the laws of the State of Delaware, and doing business in the County of San Diego, State of California. Defendant's principal place of business is in Michigan. Defendant is registered with the State of Michigan to use the assumed name (do business as) Pay Anywhere, LLC ("Pay Anywhere").

## GENERAL ALLEGATIONS

11.    Plaintiff McGhee obtained Defendant's Pay-As-You-Go service in connection with a small business he owned and operated. Defendant represented to McGhee that he would never be charged or otherwise owe anything unless and until he processed credit card transactions with NAB. Where use occurred, Defendant was to receive a set percentage of the transaction. McGhee agreed to these terms. Ultimately, McGhee never used NAB's Pay-As-You-Go credit card processing service product.

12.    In about December 2015, despite Mr. McGhee never using NAB's service, and despite NAB's multiple prior promises to not charge any such fees, Defendant NAB began deducting $3.99 "inactivity" fees from McGhee's bank account on a monthly basis. It did so through April 2016.

13.    At some point after the charges began, McGhee noticed them and contacted Defendant in an effort to stop the charges and to obtain a refund. Defendant promised to stop any further charges. The charges did not stop, however, and Defendant continued to charge McGhee monthly for several months thereafter.

14.    Defendant refused to refund McGhee and has not to this date refunded any of the inactivity fees it took from McGhee's bank account.

15.    Plaintiff Bennett acquired the Pay-As-You-Go credit card processing service product and a card reader from Defendant for processing credit card transactions in connection with a business she and her husband owned and operated called "Santa Rocks," where she and her husband made appearances as Santa Claus for children and families during the holidays, including on Christmas Day. Before

applying for the Pay-As-You-Go service and receiving the card reader, Bennett relied on NAB's statements that there was no charge for the reader itself, that there were no setup fees, no monthly fees, no monthly minimum transaction requirements, and no other hidden fees, i.e. that she would only be charged a set percentage of the transaction amounts that she processed using the Pay-As-You-Go credit card processing service product. NAB's representations about the prices for its product and services were a significant factor in her decision to get the Pay-As-You-Go credit card processing service product and card reader.

16.   Despite its promises to the contrary, Defendant started charging Bennett inactivity fees on a monthly basis.  Defendant has not to this date refunded any of the inactivity fees it took from Bennett's bank account.

## CLASS ACTION ALLEGATIONS

17.   Defendant, as a matter of common corporate policy, practice, and procedure, and in violation of the applicable law, intentionally, knowingly, and willfully charged inactivity fees despite its promises to the contrary. Plaintiff Bennett now brings class action claims pursuant to FRCP Rule 23. Plaintiff Bennett seeks to represent a class defined as all persons who became PayAnywhere merchants and who paid at least one inactivity fee beginning at the start of the applicable statute of limitations period and ending on the date as determined by the Court ("the Class").

18.   This Class Action meets the statutory prerequisites for the maintenance of a Class Action as set forth in FRCP Rule 23, in that:

(a)   The persons who comprise the Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims as a class will benefit the parties and the Court;

(b)   Nearly all factual, legal, statutory, declaratory and injunctive relief issues that are raised in this Complaint are common to the Class and will apply uniformly to every member of the Class;

(c)     The claims of the representative Plaintiff Bennett are typical of the claims of each member of the Class. Plaintiff Bennett, like all other members of the Class, was subjected to Defendant's illegal practice of charging inactivity fees despite representing that such charges would not occur. Further, Bennett never consented to Defendant debiting the inactivity fees from her bank account. Bennett sustained economic injury as a result of Defendant's practices. Bennett and the members of the Class were and are similarly or identically harmed by the same unlawful, deceptive, unfair, and pervasive pattern of misconduct engaged in by Defendant; and

(d)     Plaintiff Bennett will fairly and adequately represent and protect the interest of the Class, and has retained attorneys who are competent and experienced in Class Action litigation. There are no material conflicts between the claims of the representative Plaintiff and the members of the Class that would make class certification inappropriate. Counsel for the Class will vigorously assert the claims of all Class Members.

19.     In addition to meeting the statutory prerequisites to a Class Action, this action is properly maintained as a Class Action pursuant to FRCP Rule 23, in that:

(a)     Without class certification and determination of declaratory, injunctive, statutory, and other legal questions within a class format, prosecution of separate actions by individual members of the Class will create the risk of:

1)     Inconsistent or varying adjudications with respect to individual members establishing incompatible standards of conduct for the parties opposing the Class and/or which would as a practical matter be dispositive of interests of the other members not party to the adjudication. This would substantially impair or impede their ability to protect their interests.

(b)     The parties opposing the Class have acted or refused to act on grounds

generally applicable to the Class, making appropriate class-wide relief with respect to the Class as a whole.

(c)    Common questions of law and fact exist as to the members of the Class, with respect to the practices and violations of law as listed above and predominate over any question affecting only individual members. A Class Action is also superior to other available methods for the fair and efficient adjudication of the controversy, including consideration of:

> 1)    The interests of the members of Class in individually controlling the prosecution or defense of separate actions;

> 2)    The extent and nature of any litigation concerning the controversy already commenced by or against members of the Class;

> 3)    The desirability or undesirability of concentrating the litigation of the claims in the particular forum;

> 4)    The difficulties likely to be encountered in the management of a Class Action; and,

> 5)    The basis of Defendant's conduct towards Plaintiffs and the Class.

20.    The class is ascertainable. Defendant maintains records from which the Court can ascertain the identity, date of becoming a Pay-As-You-Go merchant, and other information of each of Defendant's customers who were systematically, intentionally, and uniformly subjected to Defendant's unlawful behavior. The records of Defendant will identify which customers incurred the monthly inactivity fees.

**FIRST CAUSE OF ACTION**
**BY PLAINTIFF MCGHEE ON BEHALF OF HIMSELF; AND BY**
**PLAINTIFF BENNETT ON BEHALF OF HERSELF AND THE CLASS**
**AGAINST DEFENDANT FOR FRAUDULENT CONCEALMENT**
**(Class Action under FRCP Rule 23)**

21.    Plaintiffs repeat the allegations contained in the foregoing paragraphs

as if fully set forth herein.

22.     Plaintiff McGhee brings this claim individually; Plaintiff Bennett brings this claim individually and on behalf of the Class against Defendant.

23.     Defendant represented to Plaintiffs and their fellow consumers that its Pay as You Go product would be just that – a pay-as-you-go credit card processing service that only cost money once the service was actually used (in the form of a percentage charged against every completed transaction). Then, in 2015, Defendant implemented a new monthly "inactivity" fee of $3.99 per month charged to merchants who had not processed a transaction within the past year. Defendant implemented this fee without obtaining the consent of any of its merchants.

24.     Defendant fraudulently concealed from and/or intentionally failed to disclose to Plaintiffs and the Class that there would be monthly charges associated with the Pay-As-You-Go credit card processing service product, including "inactivity" fees. While, upon information and belief, Defendant did attempt to send emails to at least some consumers, telling them that "inactivity" fees would be added, it did so by using bulk spam email that it *knew* might not be delivered and that, even if delivered, about 80% of its customers would never read. Moreover, Defendant knew at the time that, per its standard terms and conditions, that an email from Defendant would be insufficient to change of the price of its Pay As You Go product.  Moreover, Defendant had the capability to see exactly who did or did not open the emails it sent relating to the inactivity fee,[1] and Defendant availed itself of that capability, yet Defendant intentionally did nothing to follow-up with those consumers that it learned had never opened its attempted email disclosure.

---

[1]  Defendant utilizes "MailChimp" for this "open tracking" capability. On information and belief, the technology relating to this capability has no way of determining whether a notification that an email has been "opened" was caused by a human opening (much less reading) the email, a spam filter (which automatically checks links contained in the email which are used to track "opened" emails), or another program. https://mailchimp.com/help/about-open-tracking/ ("Our system automatically tracks clicks as opens, and we have no way of differentiating when a click is from a spam filter.") (last accessed August 6, 2021).

25.     Plaintiffs never saw or read Defendant's attempted email disclosure(s) and, upon information and belief, Defendant knew that before charging them any "inactivity" fees. Defendant charged them anyway.

26.     Knowledge regarding monthly charges associated with the Pay-As-You-Go credit card processing service product was within the exclusive knowledge of Defendant and was not something that Plaintiffs or the Class, in the exercise of reasonable diligence, could have reasonably discovered independently prior to purchase.

27.     Plaintiffs and the Class were reasonably misled as to the true terms of the acquisition of the Pay-As-You-Go credit card processing service product, as Defendant intended.

28.     Plaintiffs and the Class were harmed by Defendant's conduct.

29.     Defendant's fraudulent concealment as described above was fraudulent, malicious, and oppressive, and entitles Plaintiffs and the Class to an award of punitive damages in an amount according to proof.

**SECOND CAUSE OF ACTION**
**BY PLAINTIFF MCGHEE ON BEHALF OF HIMSELF; AND BY**
**PLAINTIFF BENNETT ON BEHALF OF HERSELF AND THE CLASS**
**AGAINST DEFENDANT FOR INTENTIONAL MISREPRESENTATION**
**(Class Action under FRCP Rule 23)**

30.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

31.     Plaintiff McGhee brings this claim individually; Plaintiff Bennett brings this claim individually and on behalf of the Class against Defendant.

32.     Defendants made various representations, to Plaintiffs and the Class, regarding the pricing of the Pay-As-You-Go credit card processing service product. Namely, Defendants represented to Plaintiffs and the Class that its Pay as You Go product would be just that – a pay-as-you-go credit card processing service that only cost money once the service was actually used (in the form of a percentage

charged against every completed transaction), i.e., that there were no other fees, hidden fees, monthly fees, or monthly minimums. Defendants made these representations consistently, in writing, including via its website and via the name of the product itself: "Pay As You Go."

33.     The representations were false.

34.     Defendant knew the representations were false when made and/or made the representations recklessly, without regard to their truth. Defendant was in fact charging and/or planned to charge individuals who obtained the Pay-As-You-Go credit card processing service product additional fees.

35.     Defendant intended for Plaintiffs and the Class to rely on the representations and they reasonably did so.

36.     Plaintiffs and the Class were harmed by Defendant's conduct.

37.     Defendant's intentional misrepresentations as described above were fraudulent, malicious, and oppressive, and entitle Plaintiffs and the Class to an award of punitive damages in an amount according to proof.

**THIRD CAUSE OF ACTION**
**BY PLAINTIFF MCGHEE ON BEHALF OF HIMSELF; AND BY**
**PLAINTIFF BENNETT ON BEHALF OF HERSELF AND THE CLASS**
**AGAINST DEFENDANT FOR UNJUST ENRICHMENT/QUASI-**
**CONTRACT**
**(Class Action under FRCP Rule 23)**

38.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

39.     Plaintiff McGhee brings this claim individually; Plaintiff Bennett brings this claim individually and on behalf of the Class against Defendant.

40.     By obtaining the Pay-As-You-Go credit card processing service product and incurring fees, Plaintiffs and the Class conferred benefits on Defendant.

41.     Defendant has been unjustly enriched in retaining the fees derived from Plaintiffs and the Class. Retention of those fees under these circumstances is

unjust and inequitable based on Defendant's misrepresentations and resulting injuries to Plaintiffs and the Class who would not have obtained the Pay-As-You-Go credit card processing service product and/or agreed to the terms associated with the Pay-As-You-Go credit card processing service product had they known the truth.

**FOURTH CAUSE OF ACTION**
**BY PLAINTIFF MCGHEE ON BEHALF OF HIMSELF; AND BY**
**PLAINTIFF BENNETT ON BEHALF OF HERSELF AND THE CLASS**
**AGAINST DEFENDANT FOR VIOLATIONS OF CALIFORNIA'S UNFAIR**
**COMPETITION LAW**
**(Class Action under FRCP Rule 23)**

42.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

43.     Plaintiff McGhee brings this claim individually; Plaintiff Bennett brings this claim individually and on behalf of the Class against Defendant.

44.     The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

45.     Defendant has committed, and upon information and belief continues to commit, ongoing unfair business practices within the meaning of California's UCL, including, but not limited to: (i) making misrepresentations about its products or services and the prices of those products and service; (ii) fraudulently concealing gees; (iii) breaching its customer contracts including the covenant of good faith and fair dealing implied in those contracts; (iv) and being unjustly enriched at Plaintiff and the Class' expense.

46.     The unlawful business practices described above have proximately caused economic injury to Plaintiffs, the Class, and the general public.

47.     Pursuant to the UCL, Plaintiffs and the Class are entitled to restitution of money or property acquired by Defendant by means of such unlawful business practices, in amounts not yet known, but to be ascertained at trial.

48.     Pursuant to the UCL, Plaintiffs, the Class, and the general public are

1  entitled to injunctive relief against Defendant's ongoing continuation of such
2  unlawful business practices.

3      49.    If an injunction does not issue enjoining Defendant from engaging in
4  the unlawful business practices described above, Plaintiffs, the Class, and the
5  general public will be irreparably injured, the exact extent, nature, and amount of
6  such injury being impossible to ascertain.

7      50.    Defendant, if not enjoined by this Court, will continue to engage in the
8  unlawful business practices described above in violation of the UCL, in derogation
9  of the rights of Plaintiffs, the Class, and of the general public.

10     51.    Plaintiffs' success in this action will result in the enforcement of
11 important rights affecting the public interest by conferring a significant benefit upon
12 the general public.

13     52.    Private enforcement of these rights is necessary as no public agency
14 has pursued enforcement. There is a financial burden incurred in pursuing this
15 action, and it would be against the interests of justice to require the payment of
16 attorneys' fees from any recovery in this action.

17     53.    Plaintiffs are therefore entitled to an award of attorneys' fees and costs
18 of suit pursuant to California Code of Civil Procedure section 1021.5.

19

**FIFTH CAUSE OF ACTION**
**BY PLAINTIFF MCGHEE ON BEHALF OF HIMSELF; AND BY**
**PLAINTIFF BENNETT ON BEHALF OF HERSELF AND THE CLASS**
**AGAINST DEFENDANT FOR VIOLATIONS OF THE FALSE**
**ADVERTISING LAW**
**(Class Action under FRCP Rule 23)**

20
21
22
23     54.    Plaintiffs repeat the allegations contained in the foregoing paragraphs
as if fully set forth herein.
24
25     55.    Plaintiff McGhee brings this claim individually; Plaintiff Bennett
brings this claim individually and on behalf of the Class against Defendant.
26
27     56.    The False Advertising Law prohibits any statement in connection with
the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code § 17500.
28

57.   As described above, Defendant's representations regarding its Pay As You Go program, and its pricing and fees, were and are untrue as well as misleading. Defendants made these representations consistently, in writing, including via its website and via the name of the product itself: "Pay As You Go."

58.   Defendant knew or should have known that its representations were untrue and misleading.

59.   Plaintiffs and the Class have lost money or property as a result of Defendant's behavior and are thus entitled to injunctive relief and restitution in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
### BY PLAINTIFF MCGHEE ON BEHALF OF HIMSELF; AND BY PLAINTIFF BENNETT ON BEHALF OF HERSELF AND THE CLASS AGAINST DEFENDANT FOR CONVERSION
#### (Class Action under FRCP Rule 23)

60.   Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

61.   Plaintiff McGhee brings this claim individually; Plaintiff Bennett brings this claim individually and on behalf of the Class against Defendant.

62.   Conversion is the wrongful exercise of dominion over the property of another, causing damages. Conversion is a strict liability tort, and the foundation of the action rests neither in the knowledge nor the intent of the defendant. Therefore, the defendant's supposed good faith, lack of knowledge, and motive are irrelevant.

63.   As a part of signing up for Defendant's Pay-As-You-Go service, Defendant required its customers, including Plaintiffs and the Class members, to provide bank account information, ostensibly for the purpose of transferring money into its customers' bank accounts. Plaintiffs and the Class members owned and had a right to possess the money in their respective bank accounts, which was their personal property.

64.   Defendant substantially interfered with Plaintiffs and the Class members' personal property by intentionally debiting the $3.99 inactivity fees from

Plaintiffs and the Class' bank accounts, which was inconsistent with Plaintiffs and the Class members' property rights.

65.     Neither Plaintiffs nor the Class members consented to Defendant's debits of the $3.99 inactivity fees from their respective bank accounts.

66.     Defendant caused Plaintiffs and the Class members harm by debiting money from their bank accounts, particularly as the money has not been returned.

67.     Defendant's acts of conversion as described above were fraudulent, malicious, and oppressive, and entitle Plaintiffs and the Class to an award of punitive damages in an amount according to proof.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff McGhee on his own behalf; and Plaintiff Bennett on her own behalf and on the behalf of those similarly situated, prays for judgment as follows:

1.     For an order certifying as a class action, under FRCP Rule 23, the claims stated herein;

2.     For damages and consequential damages according to proof;

3.     For statutory damages, punitive damages, and/or penalties according to proof;

4.     For restitution to Plaintiffs and those similarly situated of all funds unlawfully acquired by Defendant by means of any acts or practices declared by this Court to violate the mandates established by California's UCL and FAL;

5.     For an injunction to prohibit Defendant to engage in the unfair business practices complained of here;

6.     For an injunction requiring Defendant to give notice to persons to whom restitution is owing of the means by which to file for restitution;

7.     For pre-judgment interest as allowed by California Civil Code Section 3287;

1        8.     For reasonable attorneys' fees, expenses and costs as provided by

2  California Code of Civil Procedure Section 1021.5 and the other statutes at issue;

3  and

4        9.     For such other relief that the court may deem just and proper.

5                      **<u>REQUEST FOR JURY TRIAL</u>**

6        Plaintiffs hereby request a Trial by Jury.

7

8  DATED:  October 1, 2021                **NICHOLAS & TOMASEVIC, LLP**

9

10

11                         By:   <u>*/s/ Ethan T. Litney*</u>

                          Craig M. Nicholas

12                         Alex M. Tomasevic

13                         Shaun A. Markley

                          Ethan Litney

14                         225 Broadway, 19th Floor

15                         San Diego, California 92101

                          Tel:  (619) 325-0492

16                         Fax: (619) 325-0496

17                         Email: cnicholas@nicholaslaw.org

                          Email: atomasevic@nicholaslaw.org

18                         Email: smarkley@nicholaslaw.org

19                         Email: elitney@nicholaslaw.org

20                         **LAGUARDIA LAW, APC**

21                         Eric A. LaGuardia (SBN 272791)

22                         402 West Broadway, Suite 800

                          San Diego, California 92101

23                         Telephone: (619) 655-4322

24                         Facsimile: (619) 655-4344

                          Email: eal@laguardialaw.com

25

26                         *Attorneys for Plaintiffs*

27

28